BC

RECEIVED
CVK
9/3/2025
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF ILLINOIS**

**EASTERN DIVISION**

JOHNNIE LEE CARTER, a/k/a John Carter,

Plaintiff,

v.

GOOD GOOD GOLF, LLC; PEPSICO, INC.; and COMCAST CORPORATION,

Defendants.

Case No.: 1:25-cv-10543
Judge LaShonda A. Hunt
Magistrate Judge Laura K. McNally
RANDOM/Cat. 1

**COMPLAINT**

**JURY TRIAL DEMANDED**

## INTRODUCTION

1. This action challenges deceptive and unfair advertising of a ticketed entertainment event promoted with a charitable component, and seeks consumer remedies and injunctive relief under Illinois law.

## PARTIES

2. Plaintiff **Johnnie Lee Carter** (a/k/a "John Carter") resides at 1251 Lawrence Street, Detroit, MI 48202, and is a paying consumer and attendee of the September 4, 2025 event described below.

3. Defendant **Good Good Golf, LLC** is a Texas limited liability company with principal office at 5757 Main Street, Suite 200, Frisco, Texas 75034.

4. Defendant **PepsiCo, Inc.** is a corporation with its principal place of business outside Illinois; upon information and belief, PepsiCo is incorporated in Delaware and has its principal place of business in Purchase, New York.

5. Defendant **Comcast Corporation** is a Pennsylvania corporation with its principal place of business in Philadelphia, Pennsylvania.

## JURISDICTION AND VENUE

6. This Court has jurisdiction under **28 U.S.C. § 1332(a)(1)** because the parties are citizens of different States and the amount in controversy exceeds **$75,000**, exclusive of interest and costs, including actual, punitive, and statutory damages and attorneys' fees available under 815 ILCS 505/10a(c).

7. Supplemental jurisdiction exists under **28 U.S.C. § 1367(a)** over all related state-law claims.

8. Venue is proper in the **Northern District of Illinois, Eastern Division** under **28 U.S.C. § 1391(b)(2)** because a substantial part of the events or omissions giving rise to the claims occurred in this District at **Kemper Lakes Golf Club, Kildeer (Lake County), Illinois**.

## FACTS COMMON TO ALL COUNTS

9. Defendants promoted a ticketed entertainment event branded "**King of the Mountain**" scheduled for **September 4, 2025** at Kemper Lakes Golf Club in Kildeer, Illinois.

10. In advertising and ticketing pages viewed by Plaintiff on or about **August 15, 2025**, Defendants stated or implied the winning team would receive **"$50,000 to donate to the charity of their choice,"** and Defendants continued to display that representation **without identifying a charity or making corrective disclosures thereafter**.

11. The promotional materials did **not** identify any specific charitable organization; did **not** disclose whether a compliant charitable sales promotion/commercial co-venture had been registered or filed with the Illinois Attorney General; and did **not** disclose material terms governing the donation (including the recipient charity's identity, whether it is a 501(c)(3), timing of payment, restrictions, or who holds the funds).

12. On **August 18, 2025**, after seeing the charitable claim without a named beneficiary or compliance disclosures, Plaintiff notified the **Illinois Attorney General** seeking clarification. **Defendants made no public corrective disclosure or identification of a charitable beneficiary between August 18 and Plaintiff's purchase on August 26, 2025.**

13. Relying on Defendants' **ongoing charitable representation** and the **reasonable expectation** that a bona fide charitable beneficiary and required disclosures would be identified before or at the event, Plaintiff **purchased** a ticket on **August 26, 2025** and incurred related costs. **Had Defendants disclosed that no named charitable beneficiary or compliant filings existed at the time of purchase, Plaintiff would not have purchased.**

14. From August 15 through at least the ticket purchase date (**August 26, 2025**), Defendants **did not identify any charitable organization**, **did not publish commercial

co-venture/charitable-promotion disclosures**, and **did not issue any corrective statement**, despite continuing to advertise the event with the charitable donation message.

15. Upon information and belief, as of Plaintiff's purchase date, Defendants had **not** executed and filed a compliant written contract identifying the charitable beneficiary and payment terms, nor filed the required information for a charitable sales promotion with the Illinois Attorney General, nor made the disclosures the Attorney General expects in charitable sales-promotion advertising.

## COUNT I — ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT (815 ILCS 505)

16. Plaintiff realleges the foregoing paragraphs.

17. **Who:** Good Good Golf, LLC (organizer/promoter); PepsiCo, Inc. (title sponsor); Comcast Corporation (broadcast partner).

18. **What:** Advertising for the September 4 event stated the winners would receive "$50,000 to donate to the charity of their choice," while omitting the charity's identity and required disclosures regarding charitable-promotion compliance.

19. **Where/When:** Event web pages, social posts, and ticketing interfaces accessed and relied upon by Plaintiff on or about **August 15, 2025** (and thereafter with no corrective disclosure prior to purchase).

20. **How/Why Material:** A reasonable consumer would view the identity of the charitable beneficiary and regulatory compliance as material to a purchase decision for a ticketed event marketed with a charitable component; Plaintiff did so.

21. **Intent to induce reliance:** The representations were designed to increase ticket sales and attendance.

22. **Damages & causation:** Plaintiff paid the ticket price and incurred travel/time costs in reliance on the representations. If the charity identity/compliance had been disclosed or corrected, Plaintiff would not have purchased. Plaintiff also suffered the **difference in value** between a ticket marketed with a bona fide, compliant charitable component and the ticket actually received without a named beneficiary or compliant disclosures.

23. Separately and in the alternative, Defendants' conduct was **unfair**: it offends established public policy embodied in Illinois charitable-promotion oversight, is immoral/unscrupulous in marketing a charitable tie-in without naming a beneficiary or providing the expected disclosures, and caused substantial injury to consumers by inducing ticket purchases under incomplete, noncompliant information.

24. Defendants' **omissions**—failure to identify the beneficiary and to disclose charitable-promotion compliance—were **material** to a reasonable consumer and to Plaintiff's decision; Defendants alone controlled these facts and **remained silent** despite Plaintiff's public inquiry to the Illinois Attorney General.

25. At the time of purchase, Defendants' charitable message **remained in market** and **no corrective disclosure** had been made; the omissions **proximately caused** Plaintiff's payment for a ticket marketed with a charitable component lacking the promised/expected attributes.

26. Plaintiff seeks actual and punitive damages, injunctive relief, and attorneys' fees/costs under **815 ILCS 505/10a**.

## COUNT II — ILLINOIS SOLICITATION FOR CHARITY ACT (225 ILCS 460) — CHARITABLE SALES PROMOTION / COMMERCIAL CO-VENTURE NON-COMPLIANCE

27. Plaintiff realleges the foregoing paragraphs.

28. Defendants' advertisement of a $50,000 donation by winners to a charity of their choice constitutes a **charitable sales promotion** undertaken by one or more **commercial co-venturers**.

29. Upon information and belief, prior to advertising and ticket sales, Defendants did not: (a) execute a compliant written contract identifying the charity and payment terms; (b) file such contract or required information with the Illinois Attorney General; and/or (c) make appropriate disclosures in promotional materials, as expected under Illinois law and Attorney General practice for charitable sales promotions.

30. Plaintiff purchased a ticket in reliance on the charitable representation and was harmed by Defendants' failure to comply. Plaintiff seeks injunctive and equitable relief, restitution, and costs.

## COUNT III — ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT (815 ILCS 510) — INJUNCTIVE RELIEF

31. Plaintiff realleges the foregoing paragraphs.

32. Defendants' advertising and promotions tended to mislead as to the nature and compliance of a charitable donation connected to a ticketed event, creating a likelihood of misunderstanding by consumers.

33. Plaintiff seeks **injunctive relief** prohibiting future advertising of charitable components for Illinois events **without** disclosing the specific charitable beneficiary and **without** compliance with Illinois charitable sales-promotion requirements.

## COUNT IV — UNJUST ENRICHMENT (IN THE ALTERNATIVE)

34. Plaintiff realleges the foregoing paragraphs.

35. Defendants were unjustly enriched through ticket sales induced by advertising that suggested a compliant charitable component without naming a charity or providing the expected disclosures/filings. Equity requires restitution/disgorgement.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests judgment against Defendants, jointly and severally as appropriate, for:

A. Actual damages, punitive damages (ICFA), restitution/disgorgement, and pre-/post-judgment interest;

B. Injunctive relief requiring accurate disclosures of charitable beneficiaries and compliance with Illinois charitable sales-promotion requirements before advertising and ticket sales;

C. Attorneys' fees and costs where authorized (815 ILCS 505/10a(c)); and

D. All other relief the Court deems just and proper.

## JURY DEMAND

Plaintiff demands trial by jury on all issues so triable.

Dated: September 3, 2025

/s/ Johnnie Lee Carter

Johnnie Lee Carter, Pro Se

1251 Lawrence Street

Detroit, MI 48202

(313) 400-4764

john.carter2010@live.com

**EXHIBITS**

**EXHIBIT A — Cover Sheet & Public-Facing Advertising Screens**

First viewed by Plaintiff on **August 15, 2025**.

| Item # | Source/URL | Capture Date/Time | Exact Wording (quote) |
|---|---|---|---|
| 1 Ex A.1 | Good Good King of the Mountain by Mountain Dew – Good Good Golf | 8/28/2025 5:26 | "The last to survive gets $50,000 to donate to the charity of their choice." |
| 2 Ex A.2 | Good Good's King of the Mountain: Golf Meets Festival | 8/28/2025 5:26 | "$50K to charity of the winners' choice." |
| 3 Ex A.3 | Good Good King of the Mountain Presented by Mountain Dew Tickets, Thu, Sep 4, 2025 at 3:00 PM \| Eventbrite | 8/28/2025 5:26 | "The last team standing takes the crown and gets $50,000 to donate to the charity of their choice." |
| 4 | | | |
| 5 | | | |

**EXHIBIT B — Ticket Purchase Proof (Eventbrite Confirmation)**

Attached separately as PDF: **Exhibit B.pdf** (Order confirmation; Aug 26–27, 2025).

| Doc # | Description | Date/Time | Notes |
| --- | --- | --- | --- |
| B-1 | Eventbrite Order Confirmation (John Carter) | Aug 26–27, 2025 | PDF attached as Exhibit B.pdf |

**EXHIBIT C — Illinois Attorney General Filing**

Attached separately as PDF: **Exhibit C.pdf** (Charitable Promotions complaint filed Aug 18, 2025).

| Doc # | Description | Date |
|---|---|---|
| C-1 | Complaint to Illinois Attorney General (Charitable Promotions) | Aug 18, 2025 |